# LANE v. UNITED STATES.
## No. 10335.

Circuit Court of Appeals, Ninth Circuit.

April 8, 1944.

250

Geo. T. Wilson and Robert R. Weaver, both of Phoenix, Ariz., for appellant.

Frank E. Flynn, U. S. Atty., and E. R. Thurman and James A. Walsh, Asst. U. S. Attys., both of Phoenix, Ariz., for appellee.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

MATHEWS, Circuit Judge.

Appellant, Denzel Lane (formerly Denzel Rider), was indicted for violating § 14 of Title I (§§ 1–20) of the Act of March 20, 1933, c. 3, 48 Stat. 10,[1] which provides: "That whoever shall obtain or receive any money, check, or pension under * * * this title, * * * or regulations issued under [this title], without being entitled to the same, and with intent to defraud the United States or any beneficiary of the United States, shall be punished by a fine of not more than $2,000, or by imprisonment for not more than one year, or both." By § 9 of the Act of August 16, 1937, c. 659, 50 Stat. 662,[2] § 14 of the Act of March 20, 1933, was made applicable to claims for compensation under the Act of June 28, 1934, c. 867, 48 Stat. 1281, as amended.[3]

The indictment was in six counts. Count 1 alleged that on or about June 30, 1940, in the District of Arizona, appellant "did wrongfully, unlawfully and fraudulently receive compensation from the United States as the unremarried widow of one Arthur C. Rider, deceased, which said compensation was received as follows, to-wit: that the said defendant [appellant] did then and there wrongfully, unlawfully and fraudulently receive a check duly drawn on the Treasury of the United States in the sum of $30, payable to the order of Mrs. Denzel Rider, as the unremarried widow of the said Arthur C. Rider, which said check was duly executed and issued under the provisions of sections 503 and 504, Title 38, U.S.C.A.;[4] that said defendant did, upon receipt of said check, then and there endorse the same and receive the proceeds thereof, to-wit, the sum of $30;

[1] 38 U.S.C.A. § 714.

[2] 38 U.S.C.A. § 510.

[3] 38 U.S.C.A. §§ 34, 101–104, 131–134, 424a, 445d, 472a, 472b, 472d, 472e, 503–507, 507a, 508, 512c.

[4] Sections 1 and 2 of the Act of June 28, 1934, as amended.

that at said time and place said defendant was not entitled to receive said check or the proceeds therefrom, she then and there not being the unremarried widow of Arthur C. Rider, and that she then and there wrongfully, unlawfully and fraudulently received said check and the proceeds therefrom with the intent to defraud the United States." Counts 2–6 related to checks received by appellant in July, August, September, October and November, 1940. Otherwise, they were identical with count 1.

Appellant was arraigned, pleaded not guilty and was tried. The evidence showed that appellant was married to Arthur C. Rider, a World War veteran, on April 3, 1920; that Rider died on July 14, 1922; that, as Rider's unremarried widow, appellant applied for and obtained compensation under §§ 1 and 2 of the Act of June 28, 1934, as amended;[5] that such compensation was at the rate of $30 a month and was paid by checks drawn on the Treasurer of the United States; that appellant was married to George V. Lane on June 14, 1939, and hence was not thereafter entitled to compensation as Rider's unremarried widow; but that appellant did nevertheless receive, cash and retain the proceeds of six compensation checks thereafter issued to her as such unremarried widow, namely, the checks described in the indictment, and did so with intent to defraud the United States.

Appellant testified as a witness for herself and, after testifying, made a written offer of proof (appellant's exhibit C),[6] to

[5] 38 U.S.C.A. §§ 503, 504.

[6] The offer read as follows:

"The defendant [appellant] now offers to prove affirmatively by her own testimony, by documentary evidence, and to corroborate the same by the testimony of witnesses:

"That in March, 1939, and prior thereto, defendant had lost valuable personal property through theft and was then asserting a claim against various citizens of Phoenix; that she had been threatened with bodily harm because of said claim and had on one or more occasions been actually assaulted; that she appealed to local officers and failing to receive their assistance appealed to the Department of Justice of the Federal Government for assistance; that on January 31, 1939, the Department of Justice wrote her promising to look into her case; that thereafter, and in the month of March, 1939, George V. Lane approached defendant and represented himself to be an agent of the Department of Justice of the United States Government sent by that Department from Washington to assist defendant in her efforts to recover her property and to protect her from further personal violence; that George V. Lane on several occasions thereafter took defendant to the Federal Court House in the City of Phoenix, and in the presence of several parties, had her turn over to him all of her records and files pertaining to her said personal property and to a claim which she then asserted against the United States Government to recover on a life insurance policy on the life of her deceased husband, Mr. Rider, in the sum of Ten Thousand ($10,000) Dollars; that George V. Lane repeated his representations of representing the Department of Justice on several different occasions between the month of March and the 14th day of June, 1939; that on or about the 12th day of June, 1939, George V. Lane told her it would be necessary for her to go through a pretended marriage with him in order that he might live in her house and give her protection against those who had forcibly assaulted her; that she refused on that occasion to enter into such contract; that on the 13th day of June, 1939, George V. Lane showed her a letter purporting to be from the Department of Justice stating that it would be necessary for her to enter into a pretended marriage with George V. Lane and to otherwise follow his direction or the Department of Justice would withdraw him from her case and render her no further assistance; that she believed the representations so made that it was necessary for her to go through this marriage ceremony, that the marriage would not be a binding one but would be void, that it would in nowise affect her property or any right which she had against the United States Government, or any claim which she had previously asserted against the Government, or might in the future assert against the Government; that she did in that state of mind and under the belief that it was not a valid marriage she was contracting with George V. Lane accompany him to Nogales, Arizona and go through a marriage ceremony with him; that always thereafter she denied publicly having entered into any valid marriage with George V. Lane; she did not assume the name of Lane, and that she and Lane did not reside together as husband and wife.

"That subsequent to the 14th day of June, 1939, the said George V. Lane continued his representations to her and to other parties to the effect that he was a Government agent assigned to her case

which appellee, the United States, objected on the ground that the offered proof was self-serving, incompetent, irrelevant and immaterial. The court sustained the objection and rejected the offer.

■ Appellant was convicted on all counts. The court entered judgment suspending the imposition of sentence and placing appellant on probation for five years, on specified conditions. From that judgment this appeal was taken. Appellee has moved to dismiss the appeal on the ground that the judgment was not final and hence was not appealable. In view of Toyosaburo Korematsu v. United States, 319 U.S. 432, 63 S.Ct. 1124, 87 L.Ed. 1497,[7] the motion must be, and it is, denied.

■ Four alleged errors were assigned, but only one (assignment 4) is specified[8] or argued. The others are deemed waived.[9] Assignment 4 is that the court erred in rejecting appellant's offer of proof. Part of the offered proof consisted of documents attached to the offer.[10] What these documents were we do not and cannot know, for they are not in the record. We therefore cannot say that they were admissible in evidence.

■ Part of the offered proof was that in and prior to March, 1939, appellant "had lost valuable personal property through theft and was then asserting a claim against various citizens of Phoenix;" that she "appealed to the Department of Justice of the Federal Government for assistance;" that she went through a marriage ceremony with George V. Lane; that "she did thereafter receive and accept the checks mentioned in the indictment;" and that "she cashed the same and retained the proceeds thereof."[11] These facts were proved before the offer was made and were not disputed. The court was not required to permit appellant to prove them again.

■ Part of the offered proof was that appellant had "denied publicly having entered into any valid marriage with George V. Lane."[12] That part of the offered proof was inadmissible, for the denial referred to was a self-serving declaration and no part of the res gestae.[13]

■ Much of the offered proof was clearly irrelevant. One irrelevant part of it was that "about the months of March and April, 1940, George V. Lane threatened to expose [appellant] to the Federal Government for having received a widow's compensation as the unremarried widow of Mr. Rider, a World War Veteran, unless [appellant] would turn over to him all of her property," and that "this she refused to do."[14] The offer of proof was replete with such irrelevancies.

and assisting her to recover her property and to protect her from physical violence; that she always believed until informed otherwise in the month of March, 1940, that he was a Government agent as represented; that about the months of March and April, 1940, George V. Lane threatened to expose her to the Federal Government for having received a widow's compensation as the unremarried widow of Mr. Rider, a World War Veteran, unless defendant would turn over to him all of her property; this she refused to do. That she did thereafter receive and accept the pension checks mentioned in the indictment of this cause from the Federal Government; that she cashed the same and retained the proceeds thereof; that in so doing she firmly believed that she was not lawfully married to George V. Lane and that she had full right to said pension. There is attached hereto certain documents in corroboration of this foregoing offer of proof. That the witnesses who will corroborate said offer of proof are, in part, Ed Echols, Sheriff of Pima County, Arizona; Bert Smith, Special Agent of Santa Fe Railroad; Rue Kimball of Phoenix, Arizona; Mrs. Ernest Moore of Phoenix, Arizona; Dr. Browne and his wife, of Phoenix, Arizona; Mrs. Horace Steele of Phoenix, Arizona; and Mrs. McGinnis of Phoenix, Arizona.

"This offer is made and the proof is intended to disprove any criminal intent on the part of defendant to defraud the United States Government, or anyone else, or to commit any violation of Federal Statutes as charged in the indictment in this case."

[7] Decided after the motion was filed.

[8] Our Rule 20 provides that, in criminal cases, the appellant's brief shall contain "a specification by number of such of the assigned errors as are to be relied upon."

[9] Love v. United States, 9 Cir., 74 F. 2d 988; Lonergan v. United States, 9 Cir., 88 F.2d 591, 592; Muyres v. United States, 9 Cir., 89 F.2d 783, 784; Waggoner v. United States, 9 Cir., 113 F.2d 867, 868; Roubay v. United States, 9 Cir., 115 F.2d 49, 50; Utley v. United States, 9 Cir., 115 F.2d 117, 118.

[10] See footnote 6.

[11] See footnote 6.

[12] See footnote 6.

[13] Shreve v. United States, 9 Cir., 103 F.2d 796, 805–807.

[14] See footnote 6.

■ Thus it is clear that some, if not all, of the offered proof was inadmissible. Whether any part of it was admissible need not be decided, for the court was not required to separate the admissible part, if any, from the inadmissible part, but could, as it did, reject the whole offer. The rule is correctly stated in 23 C.J.S., Criminal Law, § 1031, p. 408: "When evidence offered is partly admissible and partly inadmissible, it is not error for the court to sustain an objection to its introduction as a whole, it being the duty of the party offering the evidence to separate it and to have the court rule separately as to each fact; and it is not the duty of the court to separate admissible from inadmissible evidence when embraced in a single offer." See, also, 64 C.J., Trial, § 150, p. 131.

Judgment affirmed.

DENMAN, Circuit Judge (dissenting).

I dissent. The court is refusing to consider the merits of a criminal appeal on technical grounds of exclusion of evidence, not even passed upon by the District Court. In so doing the text of the opinion does not state the major issue on the merits urged by appellant, much less measure the admissibility of the rejected testimony with reference to that issue.

To constitute the crime charged against appellant, her receipt of the checks must be "with intent to defraud the United States." Intent is of the essence of the crime. Without it there is no fraud. Obviously, a criminal intent is a mental condition, provable, as other mental conditions, by the statements of the person charged with having it.

Appellant's defense on the facts is that on the major fact of her mental condition of intent to defraud she had none, because she believed that she was not married during the whole period she was receiving the checks.

Appellant contends that she was duped into a marriage ceremony with Lane, who represented himself as an agent of the Federal Bureau of Investigation, during the course of a fraudulent scheme to ac- quire her property. The marriage was not consummated. Appellant discovered the plot and ended the affair. She believed the marriage a nullity because Lane's fraud pervaded the entire transaction. It was to prove this continuing belief that the marriage was a nullity that the rejected offer of proof was made.

In this connection it should be noted that while the objection to the proof was that it was "self-serving, incompetent, irrelevant and immaterial," the District Court ruled only that it was "self-serving." [1]

The majority opinion rejects, because self-serving, that portion of the offered proof that always after the ceremony appellant "had denied publicly having entered into any valid marriage with George V. Lane." It is obvious that her intent to defraud would have been proved if the government had shown that intent by evidence of her repeated statements during the period she was receiving the checks that she was married to Lane. It is equally obvious that her continuous statements that she was not married to the man she was living with are relevant and material to her belief and intent. Also such statements seem against the normal interest of the average woman, and the jury well could have inferred that the statements were against interest.

However, assuming that they were not against interest, they are not only relevant and material but competent to prove the absence of criminal intent. One may not only take the stand and testify to the absence of his criminal intent, but as to what his intent was. Wallace v. United States, 162 U.S. 466, 477, 16 S.Ct. 859, 40 L.Ed. 1039; Cummins v. United States, 8 Cir., 232 F. 844. In addition to his direct testimony, he may introduce evidence which relates to the foundation of his belief, including conversations with third persons, in support of his statements. Miller v. United States, 10 Cir., 120 F.2d 968; Buchanan v. United States, 8 Cir., 233 F. 257, 259.[2]

The District Court not only erred in not leaving to the jury the question whether appellant's denial of marriage to a man

---

[1] "Mr. Thurman: I want to object to the offer of proof of the defendant in this case, for the reason it is self-serving, incompetent, irrelevant and immaterial, and there is no basis for defense in this action.

The Court: I think that is true; self-serving."

[2] In the case of Shreve v. United States, 9 Cir., 103 F.2d 796, cited in the majority opinion, it was not contended the statements were admissible on the issue of intent, nor did the defendant take the stand.

with whom she was living is against her interest, but also in excluding testimony, even if serving her proof of lack of intent, showing a continuing belief that she was not married to him during the months in which she received the checks.

When considered with reference to the issue of appellant's belief as to the validity of her marriage to Lane, all the other specific items of evidence show how she acquired such a belief and its reasonableness. It is obviously competent, relevant and material for that purpose. Only by the device of taking separate sentences out of the proposal as a whole do they appear irrelevant. The journey to the penitentiary should not be aided by such desiccating technicality .

The government urges that appellant cannot contend that she did not believe her marriage to be invalid, since that is a question of law of which she is charged with knowledge. The ancient maxim, "Ignorance of the law is no excuse," is common parlance among all persons whether or not they are trained in the law. But its universal recognition does not necessarily provide grounds for its indiscriminate application to all cases, without consideration of the principle of law it expresses. Its basis may be designated as one of policy, but more specifically it is that such ignorance does not negate the criminal mind which is said to exist when a person consciously does acts which are made a crime. See Keedy "Ignorance and Mistake in the Criminal Law," 22 Harv.L. Rev. 75.

In applying it, a clear distinction should be made between those crimes in which the requisite criminal intent arises from the doing of the act prohibited and those crimes in which the acts done are only unlawful if prompted by a specific criminal intent. Townsend v. United States, 68 App.D.C. 223, 95 F.2d 352, 358, certiorari denied 303 U.S. 664, 58 S.Ct. 830, 82 L.Ed. 1121; United States v. Three Railroad Cars, Fed.Cas.No.16,513; United States v. One Buick Coach Automobile, D.C., 34 F.2d 318. It is apparent that no such distinction was made here by appellee.

In support of its position the government relies upon the Supreme Court's decision in Reynolds v. United States, 98 U.S. 145, 167, 25 L.Ed. 244. There the defendant was charged with bigamy and it was held that despite an honest observ-ance of religious duty to engage in polygamy, criminal intent was nonetheless present from the conscious doing of the acts comprising the crime. But the very language of that decision, "Every act necessary to constitute the crime was knowingly done, and the crime was therefore knowingly committed", and thus committed with intent, points to the distinction adverted to which must be made between a crime of the type there involved and the one in which specific intent is a material element.

Where acts knowingly done only assume criminal import when accomplished by a criminal intent, the maxim does not apply, —at least insofar as it relates to mistake of law—for proof of that intent must be something more than the doing of the particular acts in the absence of some presumption. Laws v. United States, 10 Cir., 66 F.2d 870, 872.

Here an additional distinction may be made to more clearly illustrate the principle involved. The source of appellant's mistake in believing herself eligible was a mistake in the law of marriage and not in the law with which she is charged with violating. Such a mistake as far as her specific belief or intent are concerned operated precisely in the same manner in her mind as a mistake of fact would have; and where criminality turns on the state of mind accompanying the commission of given acts equivocal in themselves, such mistakes must be treated in the same manner. To hold otherwise when a particular innocent belief actually exists, would result in conviction of persons for crimes which by definition they did not commit.

Assume this alleged belief of appellant to have been the actual state of her mind when she received the checks. Is she to be denied her only defense and found guilty of defrauding the government? Would the appellee contend that a woman had an intent to defraud the United States if, believing herself to be the wife of a deceased veteran, she had filed a claim in good faith and received checks and it was subsequently found that the marriage she believed she had entered was invalid? Yet this is the position urged here, for the mistaken belief in her status could not be offered as a defense and she could not deny that she had received compensation though not the widow of a veteran.

The appellant was entitled to testify as to her intent and to corroborate her testimony with other evidence pertinent to

the foundation of her belief, even though such belief was derived from a mistaken conclusion drawn from an application of the marriage laws to particular facts. It was for the jury to decide whether or not she did in fact believe herself eligible to receive compensation. The error of the trial court deprived her of her only defense. This denial was highly prejudicial and constitutes reversible error. Potter v. United States, 155 U.S. 438, 448, 15 S. Ct. 144, 39 L.Ed. 214.

The judgment should be reversed and the cause remanded to the district court.