**ZIEGLER v. UNITED STATES.**

No. 11555.

United States Court of Appeals
Ninth Circuit.

March 18, 1949.

As Amended on Denial of Rehearing
June 9, 1949.

440

Charles H. Carr, of Los Angeles, Cal., for appellant.

James M. Carter, U. S. Atty., Ernest A. Tolin, and William L. Baugh, Asst. U. S. Attys., all of Los Angeles, Cal., for appellee.

Before MATHEWS and STEPHENS, Circuit Judges, and DRIVER, District Judge.

MATHEWS, Circuit Judge.

On December 21, 1946, an information was filed against appellant (Paul J. Ziegler) and the West Coast Supply Company. The information was based on paragraph (5) of subsection (a) of § 2 of the Act of June 28, 1940, c. 440, as amended by § 301 of the Second War Powers Act, 1942, 50 U.S.C.A. Appendix, §§ 633 and 1152;[1] § 2.9 of General Ration Order No. 8, 8 F.R. 3783, issued under subsection (a) on March

---

[1] Paragraph (5) provided: "Any person who willfully performs any act prohibited, or willfully fails to perform any act required by, any provision of this subsection (a) or any rule, regulation, or order thereunder, whether heretofore or hereafter issued, shall be guilty of a misdemeanor, and shall, upon conviction, be fined not more than $10,000 or imprisoned for not more than one year, or both."

25, 1943;[2] and paragraph (d) of § 15.7 of Third Revised Ration Order No. 3, 11 F.R. 134, issued under subsection (a) on December 29, 1945.[3]

The information was in eight counts. Count 1 alleged: "On or about July 1, 1946, in Los Angeles County, California, within the Central Division of the Southern District of California, defendants, West Coast Supply Company, a partnership, and [appellant], willfully and unlawfully performed acts prohibited by section 15.7(d) of Third Revised Ration Order No. 3, in that said defendants did willfully and unlawfully issue and cause to be issued a sugar ration check for an amount larger than the balance in the account on which it was drawn, less the amount of outstanding checks drawn on that account, by issuing and causing to be issued to the Union Sugar Company a sugar ration check drawn by and on behalf of the said West Coast Supply Company and [appellant] in the amount of six hundred thousand (600,-000) pounds of sugar, on the Union Bank and Trust Company of Los Angeles, when the West Coast Supply Company had a balance in its accounts at said bank in an amount insufficient to cover the amount of said check."

Count 2 alleged: "From on or about July 3, 1946, to on or about August 17, 1946, in Los Angeles County, California, within the Central Division of the Southern District of California, defendants, West Coast Supply Company, a partnership, and [appellant], willfully and unlawfully performed an act prohibited by section 2.9 of General Ration Order No. 8, in that said defendants did willfully and unlawfully receive a rationed commodity, three hundred and eighty thousand (380,000) pounds of sugar from the Union Sugar Company, in exchange for a ration document, to wit, a sugar ration check drawn by and on be-half of the said West Coast Supply Company and [appellant] in the amount of six hundred thousand (600,000) pounds of sugar, on the Union Bank and Trust Company of Los Angeles, dated July 1, 1946, and issued by the defendants,[4] when said defendants knew and had reason to believe that the said ration document was not validly issued because the said West Coast Supply Company did not have a sugar ration bank account in said bank with a balance therein sufficient to cover the amount of said check."

Counts 3, 5 and 7 were similar to count 1, except that count 3 related to a check issued to Spreckels Sugar Company for 30,-000 pounds of sugar; count 5 related to a check issued to Holly Sugar Company for 660,000 pounds of sugar; and count 7 related to a check issued to C & H Sugar Company for 80,000 pounds of sugar.

Counts 4, 6 and 8 were similar to count 2, except that count 4 related to 30,000 pounds of sugar received from Spreckels Sugar Company on or about July 2, 1946, in exchange for the check mentioned in count 3; count 6 related to 660,000 pounds of sugar received from Holly Sugar Company from about July 1, 1946, to about August 30, 1946, in exchange for the check mentioned in count 5; and count 8 related to 80,000 pounds of sugar received from C & H Sugar Company on or about July 5, 1946, in exchange for the check mentioned in count 7.

Appellant was arraigned, pleaded not guilty to each count of the information, was tried, convicted and sentenced on each count and has appealed.

■ Thirteen alleged errors are specified. Specifications 1 and 2 are that the court erred in admitting evidence. Specification 5 is that the court erred in rejecting evidence. Specifications 1, 2 and 5 do not, as required by our Rule 20,[5] "quote

---

[2] Section 2.9 provided: "No person shall transfer or receive any rationed commodity in exchange for a ration document if he knows or has reason to believe that the ration document was not validly issued or that it was not acquired in accordance with a ration order by the person tendering it."

[3] Paragraph (d) provided: "No check may be issued for an amount larger than the balance in the account on which it is drawn less the amount of outstanding checks drawn on that account."

[4] The check mentioned in count 1.

[5] Our Rule 20 provides:
"1. Counsel for the appellant shall file with the clerk of this court 20 copies of a printed brief * * *
"2. This brief shall contain * * *

the grounds urged at the trial for the objection and the full substance of the evidence admitted or rejected, and refer to the page number in the printed or typewritten transcript where the same may be found." Hence we are not required to consider specifications 1, 2 and 5.[6] However, we have considered them and find no merit in them.

■ Specification 3 is that the court erred in denying a motion made by appellant for a judgment of acquittal. The motion was on three grounds. Ground 1 was that the information did not state an offense. This ground is not urged here and hence need not be considered by us.[7] However, we have considered it and find no merit in it.

Ground 2 was that there was "a complete variance of the proof with the allegations of each and every count of the information." Ground 3 was that the evidence was "wholly insufficient to support a verdict of guilty on any of the eight counts of the information." In substance, grounds 2 and 3 were one ground, namely, that the evidence did not warrant appellant's conviction on any of the counts. There was evidence to the following effect:

At all pertinent times, appellant and his father (John H. Ziegler) and brothers (Allen S. Ziegler and Raymond M. Ziegler) were partners doing business in Los Angeles, California, under the name West Coast Supply Company. Under that name, appellant and his father and brothers had three sugar ration bank accounts, all of which were carried by Union Bank & Trust Company of Los Angeles, hereafter called Union Bank. To distinguish the three accounts from each other, one was called the West Coast Supply Company wholesale account, one was called the West Coast Supply Company processing account, and one was called the West Coast Supply Company industrial account. On July 1, 1946, the balances in these accounts were as follows: In the wholesale account 43,-196 pounds of sugar; in the processing account, 6,832 pounds of sugar; in the industrial account, 4,689 pounds of sugar.

On July 1, 1946, in Los Angeles, appellant issued four sugar ration checks, drawn by him on the West Coast Supply Company wholesale account, as follows: To Union Sugar Company, check 144 (exhibit 6) for 600,000 pounds of sugar; to Spreckels Sugar Company, check 145 (exhibit 5) for 30,000 pounds of sugar; to Holly Sugar Company, check 146 (exhibit 4) for 660,-000 pounds of sugar; to C & H Sugar Company, check 148 (exhibit 3) for 80,000 pounds of sugar. Check 144 was issued first and was outstanding when checks 145, 146 and 148 were issued. Each of the four checks was issued for an amount larger than the balance in the account on which it was drawn less the amount of outstanding checks drawn on that account. Appellant knew this when he issued the four checks mentioned above. Therefore he knew or had reason to believe that each of them was invalidly issued.

Between July 1, 1946, and August 30, 1946, in Los Angeles, appellant and his father and brothers received a rationed commodity, namely, sugar, in exchange for ration documents, namely, the four checks mentioned above,[8] as follows: From Union

"(d) In all cases save those of admiralty, a specification of errors relied upon which shall be numbered and shall set out separately and particularly each error intended to be urged. When the error alleged is to the admission or rejection of evidence the specification shall quote the grounds urged at the trial for the objection and the full substance of the evidence admitted or rejected, and refer to the page number in the printed or typewritten transcript where the same may be found. When the error alleged is to the charge of the court, the specification shall set out the part referred to totidem verbis, whether it be in instructions given or in instructions refused, together with the grounds of the objections urged at the trial. * * *"

[6] Waggoner v. United States, 9 Cir., 113 F.2d 867; Utley v. United States, 9 Cir., 115 F.2d 117; Conway v. United States, 9 Cir., 142 F.2d 202; Tudor v. United States, 9 Cir., 142 F.2d 206; Roedel v. United States, 9 Cir., 145 F.2d 819.

[7] Waggoner v. United States, supra; Utley v. United States, supra; Cornes v. United States, 9 Cir., 119 F.2d 127; Lane v. United States, 9 Cir., 142 F.2d 249; Roedel v. United States, supra.

[8] Section 1.2 of General Ration Order No. 8 defined the term "ration document" as including a check.

Sugar Company, 600,000 pounds of sugar in exchange for check 144; from Spreckels Sugar Company, 30 000 pounds of sugar in exchange for check 145; from Holly Sugar Corporation, sometimes called Holly Sugar Company, 660,000 pounds of sugar in exchange for check 146; from California & Hawaiian Sugar Refining Corporation, sometimes called C & H Sugar Company, 80,000 pounds of sugar in exchange for check 148.

Each of the four checks mentioned above was on a printed form the last two lines of which were as follows:

"................................

(Print or type name of your account)

"............................."

(Authorized signature)

Appellant signed his name on the last line of each check. At that time, however, nothing was written, printed or typed on the preceding line. Appellant therefore contends that the checks were not "completed" and hence were not "issued," within the meaning of subparagraph (15) of paragraph (c) of § 24.1 of Third Revised Ration Order No. 3.[9] We reject this contention for the following reasons:

The evidence showed that, after appellant had signed his name on the last line of each check, his attention was called to the fact that nothing had been written, printed or typed on the preceding line; that thereupon, with appellant's knowledge, consent and approval, the words "West Coast Supply Company" or "West Coast Supply Co." were printed or typed on the preceding line of each check;[10] and that

the checks were thereafter delivered to the sugar companies to whose accounts they were made payable. Thus the checks were "completed" and "issued," within the meaning of subparagraph (15).

It is true that the words "West Coast Supply Company" or "West Coast Supply Co." were not followed by the word "wholesale" or "processing" or "industrial" to indicate the account on which the checks were drawn. The evidence, however, showed that it had been and was agreed and understood by appellant and Union Bank that, in the absence of any such indication, ration checks drawn by appellant would be treated as having been drawn on the West Coast Supply Company wholesale account. The four ration checks mentioned above were so treated, and properly so, and were "completed" checks despite the omission of the word "wholesale." In view of the agreement just referred to, they would have been "completed" checks even if the words "West Coast Supply Company" or "West Coast Supply Co." had been omitted.

█ Appellant contends that he did not have an "account," as defined in subparagraph (1) of paragraph (c) of § 24.1 of Third Revised Ration Order No. 3, and hence was not a "depositor," as defined in subparagraph (9) of paragraph (c), and that therefore the ration checks drawn by him were not "checks," as defined in subparagraph (5) of paragraph (c)."[11] As indicated above, the evidence showed that appellant and his father and brothers did business under the name West Coast Supply Company,[12] and that the West Coast

---

[9] Subparagraph (15) provided: "'Issue' when used with respect to a check, means the delivery of a completed check to the person to whose account the check is made payable." Subparagraph (16) defined the term "person" as including a corporation.

[10] The words "West Coast Supply Company" were typed in checks 144 and 148. The words "West Coast Supply Co." were hand-printed in check 145 and typed in check 146.

[11] Subparagraphs (1), (5) and (9) were as follows:

"(1) 'Account' means a sugar ration bank account carried, by a bank in which the bank keeps a record of deposits of stamps, coupons, and checks and of transfers of sugar ration credits."

"(5) 'Check' means a sugar ration check, in the form prescribed by the Office of Price Administration, drawn by a depositor against his account and made payable to the account of a named person."

"(9) 'Depositor' means a person who has a ration bank account. * * *"

[12] Appellant says that his father and brothers were partners doing business under the name West Coast Supply Company, but that he was not a member of their partnership. The evidence, however, clearly showed that appellant and his father and brothers did business under the name West Coast Supply Company. Whether they did so as partners or not is unimportant.

Supply Company sugar ration bank accounts mentioned above were accounts of appellant and his father and brothers. These accounts, obviously, were "accounts," as defined in subparagraph (1). Hence appellant and his father and brothers were "depositors," as defined in subparagraph (9), and the ration checks drawn by appellant were "checks," as defined in subparagraph (5).

■ Appellant claims to have believed that General Ration Order No. 8 and Third Revised Ration Order No. 3 terminated on June 30, 1946, with the termination of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq.[13] There was no reason for any such belief. General Ration Order No. 8 and Third Revised Ration Order No. 3 were not issued under the Emergency Price Control Act of 1942, but were issued under subsection (a) of § 2 of the Act of June 28, 1940, c. 440, as amended by § 301 of the Second War Powers Act, 1942, 50 U.S.C.A. Appendix, §§ 633 and 1152. Subsection (a) and the ration orders mentioned above did not terminate on June 30, 1946, but remained in effect and were in effect on July 1, 1946, and at all pertinent times thereafter.[14] Appellant, a lawyer by profession, should have known this.

■ Appellant contends that Third Revised Ration Order No. 3 was invalid, citing Fleming v. Moberly Milk Products Co., D.C.Cir., 160 F.2d 259. The Fleming case did not involve, much less hold invalid, the whole of Third Revised Ration Order No. 3. That order contained 165 sections. The Fleming case involved a part of one section, namely, § 19.8. We are not here concerned with §. 19.8 or any part thereof. We are here concerned with paragraph (d) of § 15.7. Paragraph (d) was not involved, considered or discussed in the Fleming

case. We have not found, in the Fleming case or elsewhere, any reason to hold that paragraph (d) was invalid. We therefore hold that it was valid.

■ Appellant points out that check 145 was for an amount smaller than the balance in the account on which it was drawn. That, however, is immaterial; for, as indicated above, check 145, like each of the other checks issued by appellant on July 1, 1946, was for an amount larger than the balance in the account on which it was drawn less the amount of outstanding checks drawn on that account.[15]

■ We conclude that the evidence amply warranted appellant's conviction on each count of the information, and that the motion for a judgment of acquittal was properly denied.

Specification 4 is that the court erred in permitting counsel for appellee (the United States) to call upon appellant, while appellant was on the witness stand, to produce his "private papers" (exhibits 40–44) and in compelling him to produce them.

Appellant took the witness stand voluntarily. On direct examination, he testified that he and his father were partners doing business under the name John H. Ziegler Company and, under that name, had a bank account; that on July 1, 1946, appellant purchased 600,000 pounds of sugar from Union Sugar Company, 30,000 pounds of sugar from Spreckels Sugar Company, 660,000 pounds of sugar from Holly Sugar Corporation[16] and 80,000 pounds of sugar from California & Hawaiian Sugar Refining Corporation;[17] that appellant signed the four ration checks mentioned above; that he paid for all the sugar purchased by him; and that "the last check given to pay for this sugar"[18] was dated July 12, 1946. Appellant thereupon produced this check and put it in

---

[13] See subsection (b) of § 1 of the Emergency Price Control Act of 1942, as amended by § 1 of the Act of June 30, 1945, c. 214, 59 Stat. 306, and as amended by § 1 of the Act of July 25, 1946, c. 671, 60 Stat. 664, 50 U.S.C.A.Appendix, § 901. See, also, § 18 of the last mentioned Act, 50 U.S.C.A.Appendix, § 901a note.

[14] See § .1501 of the Second War Powers Act, 1942, as amended by § 1 of

the Act of June 29, 1946, c. 526, 60 Stat. 345, 50 U.S.C.A.Appendix, § 645.

[15] See footnote 3.

[16] Appellant called this corporation Holly Sugar Company.

[17] Appellant called this corporation C & H Sugar Company.

[18] The quoted words indicated that this was one of several checks so given.

evidence as exhibit F. This was check 2736, drawn by appellant on the John H. Ziegler Company bank account, for $36,-838.20 payable to Union Sugar Company.

Appellant's cross-examination was, in part, as follows:

"Q. This cash check [2736] for $36,-838.20, Defendant's Exhibit F, was the check in payment of the sugar covered by the piece of paper [ration check 144], which is identified as Government's Exhibit 6 in evidence, is that right?

 * * * * * *

"The Witness: So as to be perfectly clear, this money check [2736], which is Defendant's Exhibit F, was given in payment for 6,000 bags, that is, 600,000 pounds, of sugar to the Union Sugar Company. This slip of paper [ration check 144], which is Government's Exhibit 6, was given to the Union Sugar Company in connection with the same 6,000 bags or 600,-000 pounds of sugar for which the money check [2736] was given in payment.

"By Mr. Strong [appellee's counsel]: Thank you, sir. I don't see here any of the other checks used in payment for the transactions involving the 30,000 pounds of sugar which was sold by the Spreckels Sugar Company in connection with which the piece of paper [ration check 145] marked Government's Exhibit 5 was given, nor the check, money check, covering the other two transactions of 660,000 pounds and 80,000 pounds. I ask you whether the cash checks were in the same form as this Defendant's Exhibit F [money check 2736].

"A. If it would be of any help to you, Mr. Strong, the checks are here in court.

"Mr. Strong: May I see them?

"Mr. Carr [appellant's counsel]: Just a moment. I will decide that. I am the counsel in the case.

"Mr. Strong: I am sorry. May I see them?

"Mr. Carr: No.

"Mr. Strong: I call upon the defendant [appellant] for the production of the three checks.

"Mr. Carr: Now I cite that as error to call upon the defendant upon the stand to produce any evidence in this case, and I ask your Honor to instruct the jury that he is not compelled to produce any evidence, except that which he desires to produce.

"The Court: In other words, on cross-examination?

"Mr. Carr: No, your Honor, he is not compelled to produce anything.

"The Court: Oh, yes. When a witness is on the stand, Mr. Carr, the Government is entitled to cross-examine him on any matters that pertain to the issue.

"Mr. Carr: Does your Honor order me to produce the checks?

"The Court: Yes.

"Mr. Carr: I will produce them, but I want it understood it is over my objection.

"The Court: That is right. Let the record so show.

"Mr. Carr: I might add to that, on the further ground [19] that it might tend to incriminate or bring other and collateral offenses into this case which are not charged in the information.

"The Court: That is personal privilege. I instruct the witness at this time, in view of the statement of counsel, that if you feel, Mr. Ziegler, that the production of these instruments might tend * * * to incriminate you, you have the right to refuse to answer and the court will deny the request of the Government to produce the documents.[20]

 * * * * * *

"Mr. Strong: May I have the checks, your Honor?

"The Court: Produce the checks."

Appellant thereupon produced the checks (exhibits 40-44). These were checks drawn by appellant on the John H. Zieg-

[19] Actually, this was not a "further" ground, but was the first and only ground stated.

[20] To this statement of the court, there was no response by appellant or his counsel. As will presently appear, we disagree with that part of the statement which, in effect, told appellant that he need not produce the checks if he felt that they might tend to incriminate him. Appellant, however, was not prejudiced by and does not complain of that part of the statement.

ler Company bank account as follows: Check 2698 (exhibit 40), dated July 5, 1946, for $24,645.04 payable to Union Bank; check 2699 (exhibit 41), dated July 8, 1946, for $12,322.52 payable to Union Bank; check 2724 (exhibit 42), dated July 11, 1946, for $1,866.02 payable to Spreckels Sugar Company; check 2725 (exhibit 43), dated July 11, 1946, for $5,007.42 payable to California & Hawaiian Sugar Refining Corporation; check 2726 (exhibit 44), dated July 11, 1946, for $3,696.76 payable to Holly Sugar Corporation.

After producing checks 2698, 2699 and 2724-2726 (exhibits 40-44), appellant, on further cross-examination, testified that checks 2698 and 2699 (exhibits 40 and 41) were given to Union Bank for cashier's checks which, together with check 2726 (exhibit 44) were given to Holly Sugar Corporation in payment for the 660,000 pounds of sugar purchased from it; that ration check 146 (exhibit 4) was given to Holly Sugar Corporation in connection with that purchase; that check 2724 (exhibit 42) was given to Spreckels Sugar Company in payment for the 30,000 pounds of sugar purchased from it; that ration check 145 (exhibit 5) was given to Spreckels Sugar Company in connection with that purchase; that check 2725 (exhibit 43) was given to California & Hawaiian Sugar Refining Corporation in payment for the 80,000 pounds of sugar purchased from it; and that ration check 148 (exhibit 3) was given to California & Hawaiian Sugar Refining Corporation in connection with that purchase. After appellant had so testified, checks 2698, 2699 and 2724-2726 (exhibits

40-44), hereafter called the checks, were admitted in evidence.[21]

 Appellant contends that, in permitting appellee's counsel to call upon appellant to produce the checks and in requiring appellant to produce them, the trial court denied to appellant his constitutional privilege against self-incrimination.[22] We reject this contention for the following reasons:

Appellant voluntarily took the stand and testified as a witness for himself. He thus became subject to cross-examination like any other witness and, to that extent, waived his privilege against self-incrimination.[23] On direct examination, appellant testified that he paid for the sugar purchased from Spreckels Sugar Company, Holly Sugar Corporation and California & Hawaiian Sugar Refining Corporation and indicated that he did so by giving checks. On cross-examination, appellant informed appellee's counsel that the checks so given (exhibits 40-44) were "in court." Appellee's counsel then called upon appellant to produce the checks, the court directed appellant to produce them, and appellant did so. Thus the production of the checks was a part—and, we think, a proper part—of appellant's cross-examination.[24]

 Appellant did not, when called upon by appellee's counsel to produce the checks or when directed by the court to produce them, claim his privilege against self-incrimination. Hence, if appellant had not theretofore waived that privilege, he waived it then by failing to claim it.[25]

[21] Although objected to at the trial, the admission of the checks in evidence is not specified as error.

[22] See U.S.C.A.Const. Amend. 5.

[23] Fitzpatrick v. United States, 178 U.S. 304, 20 S.Ct. 944, 44 L.Ed. 1078; Powers v. United States, 223 U.S. 303, 32 S.Ct. 281, 56 L.Ed. 448; Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054; Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704; Cravens v. United States, 8 Cir., 62 F.2d 261; United States v. Dalhover, 7 Cir., 96 F.2d 355; United States v. Buckner, 2 Cir., 108 F.2d 921; United States v. Harrison, 3 Cir., 121 F.8d 930; Banning v. United States, 6 Cir., 130 F.2d 330;

Viereck v. United States, 78 U.S.App. D.C. 279, 139 F.2d 847; Claunch v. United States, 5 Cir., 155 U.S. 261.

[24] United States v. Buckner, supra.

[25] United States ex rel. Vajtauer v. Commissioner, 273 U.S. 103, 47 S.Ct. 302, 71 L.Ed. 560; United States v. Murdock, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210, 82 A.L.R. 1376; Kolbrenner v. United States, 5 Cir., 11 F.2d 754; Cravens v. United States, supra; Nicola v. United States, 3 Cir., 72 F.2d 780; Claiborne v. United States, 8 Cir., 77 F.2d 682; United States v. Dalhover, supra; Edwards v. United States, 10 Cir., 131 F.2d 198.

■ It is true that appellant's counsel objected to the production of the checks, but that objection cannot be regarded as a claim of appellant's privilege against self-incrimination, for appellant's privilege was personal to him and could not be claimed by some one else for him,[26] not even by his counsel.[27]

In McKnight v. United States, 6 Cir., 115 F. 972, and Hilliard v. United States, 4 Cir., 121 F.2d 992, cited by appellant, the defendants (McKnight and Hilliard) were called upon by Government counsel to produce documents when the defendants were not and had not been on the witness stand and, of course, were not being cross-examined. The privilege against self-incrimination was not waived by McKnight or by Hilliard. In Harrold v. Territory of Oklahoma, 8 Cir., 169 F. 47, 17 Ann.Cas. 868, and Tucker v. United States, 8 Cir., 5 F.2d 818, cited by appellant, the defendants (Harrold and Tucker) were required by the trial court, on cross-examination, to answer questions concerning matters which were wholly unrelated to their testimony on direct examination. As to those matters, the privilege against self-incrimination was not waived by Harrold or by Tucker. Obviously, the McKnight, Hilliard, Harrold and Tucker cases are not in point here.

We conclude that there is no merit in specification 4.

Specification 6 is that the court erred in giving the jury appellee's requested instruction 8. Specifications 7-13 are that the court erred in failing to give the jury appellant's requested instructions 16, 22, 26, 35-37 and 39. Thus, in specification 6, appellant assigns as error a portion of the court's charge to the jury. In specifications 7-13, he assigns as error omissions from the charge. Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., provides:

"At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

■ In this case, each party filed a request for instructions to the jury. A copy of each request was furnished to the adverse party. Appellant's request set forth 40 requested instructions. Appellee's request set forth 12 requested instructions. Prior to the arguments to the jury, appellant objected to appellee's requested instruction 8, mentioned in specification 6, and appellee objected to appellant's requested instructions 16, 22, 26, 35-37 and 39, mentioned in specifications 7-13. Appellant's objection to appellee's requested instruction 8 cannot be regarded as an objection to any portion of the charge, for appellant's objection to appellee's instruction 8 was made before the charge was given. Until the charge was given, appellee's requested instruction 8 was not a portion of it.

Prior to the arguments to the jury, the court informed the parties and their counsel of its proposed action upon the requests, namely, that it proposed to include in the charge appellee's requested instruction 8 and omit therefrom appellant's requested.

26 Hale v. Henkel, 201 U.S. 43, 26 S. Ct. 370, 50 L.Ed. 652; McAlister v. Henkel, 201 U.S. 90, 26 S.Ct. 385, 50 L.Ed. 671; Morgan v. Haberstadt, 2 Cir., 60 F. 592; London v. Everett H. Dunbar Corp., 1 Cir., 179 F. 506; Claiborne v. United States, supra; United States v. Ginsburg, 7 Cir., 96 F.2d 882; In re Knickerbocker Steamboat Co., D.C.S.D. N.Y., 136 F. 956; United States v. Johnson, D.C.M.D.Pa., 76 F.Supp. 538.

27 London v. Everett H. Dunbar Corp., supra; In re Knickerbocker Steamboat Co., supra; United States v. Johnson, supra.

448

instructions 16, 22, 26, 35-37 and 39. When so informed of the court's proposed action upon the requests, appellant made no objection whatever. He could not at that time object to any portion of the charge or omission therefrom, for the charge had not been given.

The court, at the time it informed the parties and their counsel of its proposed action upon the requests, stated that exceptions [28] were "allowed" to appellant. Appellant, however, took no exception and made no objection. The court's statement cannot be regarded as an objection by appellant to any portion of the charge or omission therefrom, first, because it was not an objection, second, because it was not made by appellant and, third, because it was made before the charge was given. Until the charge was given, there could be no objection to any portion thereof or omission therefrom.

The charge was given, as required by Rule 30, after the arguments to the jury were completed. Appellee's requested instruction 8 was included in the charge, and appellant's requested instructions 16, 22, 26, 35-37 and 39 were omitted therefrom. Appellant did not object to any portion of the charge or omission therefrom before the jury retired to consider its verdict. Hence we are not required to consider specifications 6-13.[29]

Specifications 6-13 do not, as required by our Rule 20,[30] "set out the part referred to totidem verbis, whether it be in instructions given or in instructions refused, together with the grounds of the objections urged at the trial." For this reason, as well as for the reasons stated above, we are not required to consider specifications 6-13.[31] However, we have considered them and find no merit in them.

Judgment affirmed.

[28] See Rule 51 of the Federal Rules of Criminal Procedure.

[29] Shockley v. United States, 9 Cir., 166 F.2d 704. See, also, United States v. Sutter, 7 Cir., 160 F.2d 754; Watts v. United States, 5 Cir., 161 F.2d 511; Thayer v. United States, 10 Cir., 168 F.2d 247.

[30] See footnote 5.

[31] Conway v. United States, supra.