## GOLDBAUM et al. v. UNITED STATES.

No. 13383.

United States Court of Appeals
Ninth Circuit.

April 13, 1953.

Rehearing Denied May 14, 1953.

Harold Judson, Louis B. Minter, Edward J. O'Connor, Los Angeles, Cal., for appellants.

Walter S. Binns, U. S. Atty., Ray H. Kinnison, Asst. U. S. Atty., Chief, Criminal Division, George M. Treister, Asst. U. S. Atty., Ernest R. Mortenson, District Counsel U. S. Treasury Department, Los Angeles, Cal., for appellee.

Before MATHEWS, BONE and POPE, Circuit Judges.

POPE, Circuit Judge.

Appellants were defendants under an indictment containing thirteen counts and upon trial before the court sitting without a jury, were convicted upon all except counts 11 and 12. Of those upon which they were found guilty nine charged in-

come tax evasion;[1] one charged the making of a false partnership return;[2] and one charged a conspiracy to commit such offenses. Title 18, U.S.C.A. § 371.

The principal assignments of error urged by the appellants are to the effect that the evidence was insufficient to support the judgments of guilty upon these various counts. As sentences of equal length were imposed under each count, all to run concurrently, appellee urges that the judgment must be affirmed if the record be free from error as to any one count, and asserts that an examination of the record as to count 13, charging the making of a false partnership return under § 3809 of Title 26, will readily disclose ample evidence to sustain conviction under that count, free from error, and that thus an examination of the record as to the other counts will not be necessary.

We proceed first to examine that contention. It will shortly appear why the appellee's evidence with respect to this count 13 was far more complete than that with respect to any of the others upon which appellants were convicted.

In May, 1945, appellants formed an oral partnership in Los Angeles and thereafter conducted a commission business in wagering on horses. The partnership filed a certificate of fictitious firm name in Los Angeles County, certifying that it did business under the name "Golden News Service". This business was conducted in Los Angeles County until January, 1949. On January 29, 1949, the partnership established itself at Las Vegas, Nevada, under the name of "Flamingo Commissioner" and continued to operate until sometime in 1951. The business of the partnership was that of acting as horse racing commissioners. This meant that the partnership acted as a broker which received wagers, generally large ones, from various persons, called "bettors" desiring to bet on horse races. These wagers the appellants, as commissioners, "laid off" to various "takers". To illustrate, if a bettor placed with appellants a $10,000 bet that a certain horse would win, appellants would place or "lay off" this bet to other persons or "takers". Thus appellants were the intermediaries who established the contact between the bettor, who wagered that the horse would win, and the taker, who wagered that it would not. If the horse won, the taker would forward the amount won to appellants who in turn would pay the winnings to the bettor. Customarily no commission was paid in such a case where the horse won, but if the horse lost the bettor would forward the amount wagered to appellants who would in that case deduct a commission of 2½% to 5% and forward the balance to the taker. In the case of the $10,000 bet, if the horse lost and the commission was 5%, the appellants' profit would be $500.

Various counts of the indictment charged the appellants with evading their individual income taxes for the years 1945, 1946 and 1947. The indictment also contained count 13, previously mentioned, which charged them with making a false partnership return for the year 1949. The Government experienced considerable difficulty in making proof of the amount of the income received by the several individual partners for the years 1945, 1946, and 1947, because

1. Title 26 U.S.C.A. § 145(b): "Failure to collect and pay over tax, or attempt to defeat or evade tax. Any person required under this chapter to collect, account for, and pay over any tax imposed by this chapter, who willfully fails to collect or truthfully account for and pay over such tax, and any person who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution."

2. Title 26 U.S.C.A. § 3809: "Verification of returns; penalties of perjury. (a) Penalties. Any person who willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter, shall be guilty of a felony, and, upon conviction thereof, shall be fined not more than $2,000 or imprisoned not more than five years, or both."

of the manner in which the partnership dealt with its record of transactions carried on. When an order for the placing of a bet was received, it would be noted upon a small sheet of paper. Thereafter, and before the end of the day, all the transactions on all such small sheets were entered on a large master sheet which disclosed the commissions payable on each transaction. Accompanying the large master sheet was a smaller summary of information contained thereon. The balances which appeared on these summaries were then entered upon the sheets of a bound book or ledger. All of these daily records, including all master sheets and summaries, were promptly and systematically destroyed. Even the bound books or ledgers, which were supposed to show the amount of commissions earned, were unavailable for all years except the year 1949. Appellants assert that these were lost and appellee says they were concealed; at any rate they were unavailable at the trial. However, the proof available for the year 1949, the year for which it is asserted a false partnership return was filed, is somewhat different for two reasons. The ledger or account book for the business for that particular year was available and was introduced in evidence as Exhibit 31. It purports to show, from day to day, the winnings paid to the various customers and the amounts retained by way of commissions by the partnership. The commissions shown on this exhibit are the amounts which appear on the partnership return as the partnership income for the year 1949.

Also, for the year 1949, as distinguished from the earlier years listed in the indictment, the Government was able to produce secondary evidence of the contents of some of the destroyed daily records and master sheets and of records of other transactions which the Government asserted disclosed that the partnership had substantial additional income above and beyond that which is disclosed in Exhibit 31 and contained in the partnership return. When the appellants moved into Nevada, they were operating in a State which licensed their gambling operations, but which also taxed them. To ascertain the amount of tax due, the State made periodical examinations of the record of appellants. The examiners required the records, which would ordinarily have been destroyed from day to day, to be preserved until the State could complete its audit. The auditor for the State was a witness for the Government and his worksheets made at the time he checked these records were received in evidence.

From the evidence thus made available for proof under count 13 (which charged the false partnership return for 1949), the court found that the partnership in 1949 had income which its return failed to disclose. The principal source of such additional income was the partnership interest in a so-called "gambling combination" or "syndicate" which operated in Las Vegas during the year 1949. Evidence with respect to this gambling combination and the appellants' interest in it, came to light in the course of the State's audit. This audit, made shortly after April 26, 1949, turned up the fact that all transaction sheets prior to April 9, 1949, had been destroyed. But the auditor obtained the complete records from April 9 to April 26, 1949. Analysis of these revealed that aside from its commission business the partnership had a substantial interest in this gambling combination.

The combination or syndicate was engaged, not in acting as broker or commissioner for laying off of bets, but directly in gambling. The participants in the syndicate were known by certain cryptic designations. Thus Golden News Service, or the partnership here involved, appeared on the records of various transactions as "GN"; it had an interest of approximately 45%. Other participants were known as "PR", "JR", and "Willie". For the days covered by these records the gambling profits were shown to be $64,638.25 for the syndicate, of which the Golden News Service's share was $29,060.75. No portion of this profit was included in or appeared upon the partnership return.

It is true that the appellant Cooke, who was in charge of the partnership's Las Vegas office, told the auditor that "GN" or Golden News Service, which had this part interest in the gambling syndicate, was composed only of Goldbaum and Capri, and

that he, Cooke, had no part in it. From this it is argued that these gambling winnings were not partnership income but rather separate income of Goldbaum and Capri alone. But the court was not obliged to believe this statement to the auditor. In the first place the license for the betting commission business in Nevada was in the name of appellant Cooke, alone. Therefore when the business was being audited on behalf of the State, Cooke may well have had a motive in representing to the auditor that he was disassociated from the gambling syndicate or combination whose winnings had thus come to the attention of the auditor. There was, on the contrary, an abundance of evidence to disclose that the Golden News Service which thus participated in the gambling earnings was the same partnership which had done business under that name before it moved from Los Angeles. Thus the partnership return here in question, and which was filed February 10, 1950, was in the name of Golden News Service of Las Vegas, Nevada. The return shows that all three appellants were equal partners therein. On May 1, 1949, the appellant Cooke wrote to the tax consultant who prepared the returns and looked after tax matters for the partnership, stating that

Golden News Service had moved its activities to Las Vegas, and that although Cooke had taken the license in his own name, representing himself to be the sole owner, yet "for income tax purposes, the joint venture of the Golden News Service remains intact" and "the joint three venturers of the Golden News Service remain as heretofore." [3]

The Government claimed and the court found that the partnership income for 1949 was substantially understated, not merely because of its omission of the $29,060.75 gambling winnings mentioned above but also because it omitted income received by the partnership during the first 28 days of January, 1949. The partnership return conformed to the Exhibit 31 mentioned above in that neither showed any receipts for that period. There was evidence, however, that during that period the partnership carried on its betting commissioner business. That was the business, it will be recalled, in which the partnership risked nothing and in which it was bound to have commissions as profits if it operated at all. Neither the exact nor the approximate amount of these January receipts could be proven because of the concealing and destroying of the records and books.[4] Nevertheless, this evidence was not without substance.[5]

---

3. The record also discloses an undated letter written by Cooke to Goldbaum making the assertion that the betting commission operation upon the Flamingo premises under the name of Flamingo Commissioners "is my venture * * *. It is expressly understood and agreed that you have no financial or other interest in this venture." The appellants themselves make no such claim here but concede that their partnership continued at Las Vegas. It is obvious that the trial court realized that it was here dealing with a somewhat fantastic situation presented by a partnership engaged first in a wholly unlawful venture in which systematic and prompt destruction of the records was the regular routine and where the business when transferred to Nevada was opened up with the pretense that Cooke was the sole proprietor and so named in the State's license. In endeavoring to arrive at the facts, in the midst of sundry conflicting and self-serving declarations of this kind, the court must have been reminded of Scott's couplet commencing "Oh what a tangled web we weave. * * *"

4. There was some evidence of understatement of receipts and profits of the partnership with respect to which the court made no specific findings. The auditor for the State of Nevada testified that when the complete records were available to him covering portion of the month of April, 1949, he made a spot check of the commission earned on two days, April 9 and April 14. His work sheet showed that the commissions of the partnership from the betting commission business for those two days were substantially greater than those which appeared in the ledger Exhibit 31 from which the partnership return was made.

5. Gleckman v. United States, 8 Cir., 80 F.2d 394, 401: "It is apparent that when a taxpayer * * * engages in such a multiplicity of financial transactions in any year * * * and if he keeps no accounts whatever * * * it would not be possible for any complete account of his business to be made up for the government by any kind of skilled accountancy. More especially, where the business transacted may be of an illegal nature."

Notwithstanding the evidence thus was sufficient to warrant a finding of wilful understatement of the partnership return for 1949, appellants contend that the court was not permitted to base a finding of guilt under count 13 upon the evidence to which we here refer because that evidence constituted a material and fatal variance from the allegations of the indictment and the specifications of the bill of particulars which the court required the Government to furnish.

■ Count 13 charges appellants with wilfully and knowingly making a partnership return for the calendar year 1949 which they did not believe to be true and correct as to every material matter. The specification is as follows: "* * * in that the said return disclosed that the partnership had gross receipts from business or profession for the said calendar year of $136,338.50, that total assets at the beginning of the taxable year 1949, were none, and that total assets at the end of the taxable year, 1949, were none; whereas, as they then and there well knew and believed, the partnership had gross receipts from business or profession for said calendar year in the sum of at least $3,685,469.75, total assets at the beginning of the taxable year, 1949, were at least $47,980.98, and total assets at the end of the taxable year, 1949, were at least $48,256.46." The figure of $136,338.50 is the item of gross receipts or total income shown in the partnership return. The evidence relating to the gambling syndicate would disclose that total income was greater than this amount by at least $29,060.75. This would fall far short of the allegation of $3,658,469.75, but so far as the indictment itself is concerned, this falling short of the proof of the larger amount cannot be said to constitute a variance either material or prejudicial.[6]

■ Appellants say that the theory of this count of the indictment was restricted by the bill of particulars which the court required.[7] The material portion of that bill of particulars, that is to say, the portion relating to the gross receipts figure, reads as follows: "The gross receipts figure of $3,685,469.75 for 1949 alleged in Count Thirteen of the indictment was derived from the books and records of the Golden News Service (Flamingo Commissioners)". Appellants argue that the theory upon which they were prosecuted under count 13 was simply that it was the duty of the appellants in making up their partnership return to disclose as gross receipts not merely their total commissions but also the gross amount of money handled by them for other persons in connection with their commissioner business.

In our view the bill of particulars, as stated and filed, cannot be said to so restrict the proof. Actually it is apparent that it says practically nothing except that the figure referred to was derived from the books and records of the Golden News Service. It may well be that the bill of particulars so furnished could have been required to be further elaborated or supplemented on motion, but as furnished we think it did not in fact operate to limit the character of the admissible proof under the original count.

■ In considering the question of variance, we bear in mind what was stated in Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314, as follows: "The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense."

6. "Proof of the amounts of the appellant's income need not measure up to the amount stated in the indictment." Gendleman v. United States, 9 Cir., 191 F. 2d 993, 996.

7. The record brought here does not disclose the proceedings relating to a bill of particulars. We are proceeding upon the assumption that the contents of the bill of particulars is correctly stated in the appendix to appellants' brief. The Government does not question its accuracy.

■ Counsel for the Government in his opening statement said of the appellants: "In 1949 they moved to Las Vegas to the Flamingo Hotel there. That is when they operated as the Flamingo Commissioners. Now, so far, I have said that their main source of income, the government contends, was from the commission business; but the government will also prove, in addition to the commission business, they engaged in gambling activities of the usual bookmaking sorts, only in large amounts, and the government will prove that they had a source of income from this type of transaction." In the light of this statement of counsel we do not see how it can be said that respondents were either taken by surprise or prejudiced in respect to the Government's proof of additional income for 1949. No request for time to meet this promised proof was ever made. We think that it cannot be said that there was here any variance of a character which could have misled the defendants at the trial. Smiley v. United States, 9 Cir., 186 F. 2d 903, 905.

■■ We hold therefore that the court properly found the appellants guilty of the charges upon count 13, and since the evidence was sufficient to sustain a conviction upon that count, and since the sentences imposed upon the other counts run concurrently, it is not necessary to inquire as to the sufficiency of the evidence under the other counts. Doan v. United States, 9 Cir., 1953, 202 F.2d 674; Abrams v. United States, 250 U.S. 616, 619, 40 S.Ct. 17, 63 L.Ed. 1173; Sinclair v. United States, 297 U.S. 263, 299, 49 S.Ct. 268, 73 L.Ed. 692.

The judgment is affirmed.