**REMMER v. UNITED STATES.**

No. 13281.

United States Court of Appeals
Ninth Circuit.
May 28, 1953.

Rehearing Denied June 30, 1953.

Gillen & Golden, San Francisco, Cal., Lohse & Fry, Reno, Nev. and Spurgeon Avakian, Oakland, Cal., for appellant.

Charles S. Lyon, Asst. Atty. Gen., Ellis N. Slack, Meyer Rothwacks, Joseph F. Goetten, Joseph A. Sommer, Alonzo W. Watson, Sp. Assts. to Atty. Gen., Miles N. Pike, U. S. Atty., Reno, Nev., for appellee.

Before MATHEWS, STEPHENS and ORR, Circuit Judges.

ORR, Circuit Judge.

Appellant stands convicted on four counts of an indictment charging wilful attempts to defeat and evade taxes due and owing from him and his wife for the years 1944 and 1945 in violation of § 145(b) of the Internal Revenue Code, 26 U.S.C.A. § 145(b).[1] He was sentenced to imprisonment for five years and a fine of $5,000 on each of the four counts, the sentences of imprisonment to run concurrently and the fines to be cumulative. The judgment is challenged upon numerous grounds.

1. Bill of Particulars.

Appellant first contends that the trial court erred in denying his motion for a bill of particulars made pursuant to the provisions of Rule 7(f), Federal Rules of Criminal Procedure.[2] Particular stress is placed upon the fact that the indictment did not inform him as to the source or sources of his alleged net income, the item or items making up his alleged net income, and the method or methods by which the Government computed his alleged net income. An application for a bill of particulars is one addressed to the sound discretion of the court. Our inquiry: Was that discretion abused? Wong Tai v. United States, 1927, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545; Himmelfarb v. United States, 9 Cir., 1949, 175 F.2d 924, certiorari denied 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527; Maxfield v. United States, 9 Cir., 1945, 152 F.2d 593, certiorari denied, Wilton v. United States, 327 U.S. 794, 66 S.Ct. 821, 90 L.Ed. 1021. A bill of particulars should be granted where it is thought necessary (1) to protect the defendant against a second prosecution for the same offense, or (2) to enable the defendant to adequately prepare his defense and avoid surprise at the trial. In the instant case the indictment charged that appellant filed tax returns disclosing a certain net income and tax due, whereas, in fact the net income and tax due were of a specified greater amount. It is apparent that the offense charged is sufficiently defined to protect appellant from double jeopardy. We deem it significant that appellant has not contended that he was subjected to surprise during the trial by the nature of the Government's case and thus unprepared to meet the charges against him. See Himmelfarb v. United States, supra; Maxfield v. United States, supra. The situation is quite different from that in Singer v. United States, 3 Cir., 1932, 58 F.2d 74, upon which appellant relies, since there emphasis was placed upon the frequent interruptions of the trial that were necessary so that the prosecution could give the defendant information which would have been contained in a requested bill of

---

1. 26 U.S.C.A. "§ 145. Penalties

\* \* \* \* \* \* \*

"(b) Failure to collect and pay over tax, or attempt to defeat or evade tax. Any person required under this chapter to collect, account for, and pay over any tax imposed by this chapter, who willfully fails to collect or truthfully account for and pay over such tax, and any person who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution."

2. 18 U.S.C.A. Federal Rules of Criminal Procedure.

III. Indictment and Information.

"Rule 7. The Indictment and the Information

\* \* \* \* \*

"(f) Bill of Particulars. The court for cause may direct the filing of a bill of particulars. A motion for a bill of particulars may be made only within ten days after arraignment or at such other time before or after arraignment as may be prescribed by rule or order. A bill of particulars may be amended at any time subject to such conditions as justice requires."

particulars. Thus, the defendant in that case was in fact unable adequately to prepare his defense because of the failure to grant the bill. Moreover, the indictment in the Singer case failed to distinguish certain partnership gross income from partnership net income, an item upon which the defendant should have been advised and which could have been ascertained only from a bill of particulars. No such prejudice to appellant is evident in the instant case. The offense charged was specifically stated in the indictment. Appellant was in a position to know whether the facts alleged were true. The most to which appellant was entitled prior to trial was disclosure of the theory of the Government's case. United States v. Caserta, 3 Cir., 1952, 199 F.2d 905. That the Government was proceeding upon a net worth theory was made known to appellant during the course of argument on the motion for a bill of particulars.[3] The District Court in the exercise of its discretion determined that granting the requested bill of particulars would merely apprise appellant of information in the hands of the prosecution to which he was not entitled. Under the circumstances, no abuse of discretion appears. A bill of particulars has been denied in prosecutions under similar tax evasion indictments. See United States v. Rainey, D.C.W.D.Mo.1950, 10 F.R.D. 431; United States v. Mangiaracina, D.C.W.D.Mo.1950, 10 F.R.D. 415; but see United States v. Kelly, D.C.W.D. Mo.1950, 10 F.R.D. 191.

## II. Accessibility of Records.

Appellant asserts that the trial court erred in denying the defense access to certain books, papers and documents in the possession of the Government. The following facts are pertinent to consideration of this contention.

Long prior to the filing of the criminal indictment in April of 1951, appellant knew that the Government was investigating his income tax liability. The Bureau of Internal Revenue issued 90-day letters in 1949 and prior to February of 1950 a federal income tax lien in excess of $800,000 was placed against his property. Numerous conferences were had subsequent to January 11, 1950, with various attorneys and accountants representing appellant in tax matters. Power of attorney was executed by appellant to counsel of record in the present litigation as early as March 10, 1950, for the purpose of representing appellant in tax conferences with the Government. Other attorneys and accountants have represented appellant with the Treasury Department since early in 1949, powers of attorney filed with that department disclose.

During the course of its investigation, the Government acquired voluntarily from third parties certain books, papers and documents pertaining to businesses in which it was alleged that appellant had an interest.[4] Being advised, in the course of conferences, that an audit of appellant's affairs was being conducted, the Government gave appellant's accountants complete access to the aforementioned records in its possession. An affidavit executed by one of these accountants stated that the material consisted of a "mass of original documents" and that "this material filled a packing box of approximately fifty cubic feet in volume plus several other smaller cartons." Although the accountants surveyed the material at this time, spring of 1950, no complete analysis of the records is said to have taken place since appellant did not make sufficient funds available for the task. At another time prior to the filing of the indictment in this case, accountant Lawrence Semenza sought permission to examine these records in connection with work he was doing for appellant in computing his

---

3. Mr. Campbell, Government counsel, made the following statement:
 "Mr. Campbell: Well, we are in this position, your Honor—as Mr. Golden is aware, the Government's case here is what is termed a net worth case."

4. In computing appellant's income for the years 1944 and 1945 the Government relied in part upon the net worth of the following businesses: B-R Smoke Shoppe, Day-Nite Cigar Store, 110 Eddy Street, and Menlo Club, all in San Francisco; 21 Club and San Diego Social Club, both in El Cerrito, California.

civil tax liability subsequent to issue of the 90-day letters. Semenza was not only allowed to examine the business records in the possession of the Government, but was allowed to select any records he desired for use in his own office.

After the filing of the indictment, no request was made by appellant's counsel for examination of the records not previously selected by Semenza until October 22, 1951, more than six months after the filing of the indictment. The Government agreed to allow inspection of these records only on the compliance with certain conditions: a sufficient showing of appellant's interest and consent of the third parties who had originally given the records to the Government.

Appellant first sought a court order on November 14, 1951, when a motion was made to inspect and take copies pursuant to the provisions of Rule 16, Federal Rules of Criminal Procedure.[5] In conjunction with this motion, appellant also sought a continuance of his trial until April 1, 1952, to enable sufficient time for examination of the requested records. In this regard it should be noted that trial was set for November 28, 1951. The motions to inspect and take copies and for a continuance were denied by the trial court after a hearing.

█ The District Court properly exercised its discretion in denying these motions. As has been observed, at no time prior to the filing of the indictment was the freedom of appellant to examine the rec-

ords in the possession of the Government in any way limited. At least three accountants representing appellant did in fact survey the material in question and one accountant was allowed to take all records he thought necessary for the computation of appellant's tax liability.[6] Although it is true that accounting analysis of these records was at that time only for the purpose of settling appellant's civil tax liability, based on net income alleged by the Government in its 90-day letters to be $136,718.94 for 1944 and $265,661.78 for 1945, analysis of the materials for that purpose would of necessity cover the same ground and consider the same sources of income as would analysis for the purpose of the present criminal proceedings where the Government alleged lesser sums as income: $67,469.21 for 1944 and $75,865.19 for 1945. The opportunity afforded appellant to examine the records in question was sufficient to enable him to prepare an adequate defense. Furthermore, there is no adequate explanation as to why appellant waited more than six months after filing of the indictment to request permission of the Government to examine the records and first made his motion under Rule 16 two weeks before the trial was due to commence. The affidavits supporting the motion to produce and take copies conceded that accounting analysis of the records would probably take two or three months. One of appellant's counsel averred in his supporting affidavit that he first learned in

---

5. 18 U.S.C.A. Federal Rules of Criminal Procedure.

IV. Arraignment and Preparation for Trial.

"Rule 16. Discovery and Inspection

"Upon motion of a defendant at any time after the filing of the indictment or information, the court may order the attorney for the government to permit the defendant to inspect and copy or photograph designated books, papers, documents or tangible objects, obtained from or belonging to the defendant or obtained from others by seizure or by process, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable. The order shall specify the time, place and manner of making the inspection and of taking the copies or

photographs and may prescribe such terms and conditions as are just."

6. Mr. Semenza testified as follows concerning his acquisition of records which were in the possession of the Government:

"Q. [By Mr. Campbell] At the time you obtained those records, isn't it a fact you were taken into a room where the records were and told you could have anything you wanted? A. That is true.

"Q. And you were the one who selected these particular records as they were the pertinent records having to do with the matter which you were then investigating, which was the liability of Mr. Remmer? A. That is right.

"Q. They were the only records you considered of any use to you in that connection? A. That's right."

October of 1951 that the Government had possession of various books and records of some of the business in which appellant had an interest.[7] But the facts to which we have already referred show that other representatives of appellant knew of the existence of the records, and at the very least had surveyed the material, many months earlier. The motion to produce and take copies therefore was not timely. To refuse to continue the trial until April 1, 1952, as requested, was not an abuse of the court's discretion in view of appellant's tardiness in bringing his motion.

Subsequent to denial of his motion to inspect and take copies under Rule 16, appellant on November 23, 1951 filed a motion for production and inspection under the provisions of Rule 17(c), Federal Rules of Criminal Procedure.[8] A *subpoena duces tecum* was served on Government counsel, which they thereupon moved to quash. After a hearing on the day before the trial was to commence, the trial court granted the Government's motion and denied appellant's motion. Because of the circumstances already discussed, the court did not err in determining that compliance with the subpoena would be unreasonable and oppressive.

The case of Bowman Dairy Co. v. United States, 1951, 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879, is not authority for the proposition that the trial court's denial of the motion under Rule 17(c) was an abuse of discretion, as appellant has argued. The Supreme Court in that case held that the trial court had the power to order the Government to produce certain documents. It did not hold that a refusal to grant the motion to produce would have been an abuse of discretion.

We think it important to stress, in considering whether denial of appellant's motions should be upheld, that the purpose of motions of this type is to expedite the proceedings and enable a defendant adequately to prepare his defense. No specific showing has been made by appellant as to how the denial of these sweeping motions calling generally for production of all records in the possession of the Government pertaining to businesses in which it was alleged appellant had an interest prejudiced the defense during the course of the trial. The court stated that appellant's counsel would be given ample opportunity during the trial to examine any document offered by the Government. Only once during the trial did appellant seek the production of particular papers, certain daily poker sheets from the 186 Club, and the request was granted.

We have referred to certain books, papers and documents given voluntarily by third parties to the Government, which were selected by appellant's accountant Semenza prior to the indictment and taken by him to his own office for use in computing appellant's tax liability. These records were given to Semenza upon the condition that he return them to the Bureau of Internal Revenue. Semenza later gave the records to Friedman, another accountant employed by appellant, who in turn gave the records to appellant's counsel. When subpoenaed before the grand jury, and later during the trial, Semenza said he was unable to produce the records because appellant's counsel would not return them to him.

---

7. However, another of appellant's counsel stated during oral argument of the motion that counsel learned at an "early stage in this case" that the Government had "quite an abundance of records."

8. 18 U.S.C.A. Federal Rules of Criminal Procedure.
 IV. Arraignment and Preparation for Trial.
 "Rule 17. Subpoena
 \* \* \* \* \*
 "(c) For Production of Documentary Evidence and of Objects. A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys."

The District Court then ordered appellant's counsel to deliver these records to the clerk of the court, the records to be available to both Government and defense counsel during the trial. Appellant thereupon made a motion under Rule 41(e), Federal Rules of Criminal Procedure,[9] for return of these records and suppression of their use as evidence. The motion was denied.

■■■ Appellant contends that the trial court's order violated the Fourth and Fifth Amendments to the Constitution of the United States. We do not agree. The records given to Semenza were obtained by the Government from third parties rather than from appellant. Use of such records by the prosecution would not violate appellant's constitutional rights, even were it true that the third parties originally obtained the records from appellant illegally.[10] See Lustig v. United States, 1949, 338 U.S. 74, 78–79, 69 S.Ct. 1372, 93 L.Ed. 1819; Feldman v. United States, 1944, 322 U.S. 487, 492, 64 S.Ct. 1082, 88 L.Ed. 1408; Symons v. United States, 9 Cir., 1949, 178 F.2d 615. Since the Government's possession was such as properly to entitle it to use of the records as evidence, the condition that the records be returned was lawfully imposed when Semenza's request to select certain records for accounting analysis was granted. Such a promise to return the records was enforceable. Cf. Greenbaum v. United States, 6 Cir., 1922, 280 F. 474, 478. Appellant's counsel took the records subject to the imposed condition and therefore could not retain them by asserting so-called constitutional rights of appellant. As the Supreme Court said in Hale v. Henkel, 1906, 201 U.S. 43, at pages 69–70, 26 S.Ct. 370, at page 377, 50 L.Ed. 652: "The right of a person under the 5th Amendment to refuse to incriminate himself is purely a personal privilege of the witness. It was never intended to permit him to plead the fact that some third person might be incriminated by his testimony, *even though he were the agent of such person.*" (Emphasis added.) Nor was appellant in a position to assert constitutional rights, because appellant never acquired personal possession of the records after they were given by the Government to Semenza. "A party is privileged from producing the evidence, but not from its production." Johnson v. United States, 1913, 228 U.S. 457, 458, 33 S.Ct. 572, 57 L.Ed. 919.

■■ The case of People v. Minkowitz, 1917, 220 N.Y. 399, 115 N.E. 987, referred

---

9. 18 U.S.C.A. Federal Rules of Criminal Procedure.

IX. Supplementary and Special Proceedings.

"Rule 41. Search and Seizure

\* \* \* \* \*

"(e) Motion for Return of Property and to Suppress Evidence. A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for use as evidence anything so obtained on the ground that (1) the property was illegally seized without warrant, or (2) the warrant is insufficient on its face, or (3) the property seized is not that described in the warrant, or (4) there was not probable cause for believing the existence of the grounds on which the warrant was issued, or (5) the warrant was illegally executed. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial. The motion to suppress evidence may also be made in the district where the trial is to be had. The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing."

10. There is no indication in the record on appeal that the books and documents were ever taken from appellant's possession illegally. At the hearing on the motion for return of the books and documents and suppression of their use as evidence, appellant sought permission to adduce testimony as to the circumstances of the Government's original acquisition of the records. The District Court held that appellant's attempt to raise this question for the first time at that point in the proceedings was not timely, relying upon the last sentence of Rule 41(e), Federal Rules of Criminal Procedure.

to for the first time by appellant during oral argument, is distinguishable. That case involved papers originally in the possession of the defendant which had been given to his attorney in the course of an attorney-client relationship. The court held that under those circumstances the possession of the attorney was the possession of the defendant, and the attorney therefore could not be compelled to produce the papers. In the present case, however, the records were not acquired by appellant's counsel from appellant in the course of an attorney-client relationship, but were instead received from the Government subject to the condition that they be returned.

### III. Sufficiency of the Evidence.

The Government's case is based upon the net worth method, the underlying theory of which is that where a person's net worth at the end of a particular year is greater than his net worth at the beginning of that year, and such increment is not attributable to gifts, devises, loans, or other non-income sources, an inference may be drawn that the increase in net worth represents income to the taxpayer. The net worth computations of the Government tended to show that appellant had failed to report taxable income of $31,747.91 in 1944 and $11,747.04 in 1945. No attempt was made by the Government in this case to increase this sum by the amount of appellant's non-deductible expenses during the years in question. The Government not only relied upon numerous documents and the testimony of more than fifty witnesses to establish the increment in appellant's net worth during the years 1944 and 1945, but also extensively investigated possible non-income sources of net worth in order to exclude their effect. The question of the sufficiency of the evidence was raised by appellant's motion for judgment of acquittal made at the close of the case.

 The net worth method of computing income may be used only where a taxpayer does not keep books or such books are inadequate in that they do not clearly reflect income. See 26 U.S.C.A. § 41. The jury was so instructed in the present case, and the evidence is sufficient to sustain a finding that appellant's records were inadequate. Ray Weaver, the special agent in charge of the Bureau of Internal Revenue investigation, testified, as an expert, that in his opinion the records of the enterprises in question were not adequately kept. Specific illustrations of such inadequacy were given by Weaver and other witnesses.[11] As hereinbefore stated, appellant's accountants had made a survey of the records pertaining to appellant's business enterprises in the Government's possession prior to trial. Therefore, the alleged failure of the Government to introduce in evidence all such records in its possession is not significant since if any records adequately reflecting income were in existence appellant could have specifically requested their production during the trial.

 Appellant attacks the accuracy of the Government's computation of his starting point net worth, that is, his net worth on December 31, 1943. It was necessary for the Government to establish appellant's net worth at the beginning of the period during which the alleged evasion occurred in order to compare his increment in net worth with the income actually reported by appellant on his and his wife's tax returns. The fundamental question presented is what quantum of evidence must be offered by the Government before a trial court can properly submit the case to the jury. Whether sufficient evidence has been introduced in a given case will of course depend upon the facts of that particular case. In deciding whether the trial court properly denied appellant's motion for judgment of acquittal, the evidence must be taken in the light most favorable to the Government. Gendelman v. United States, 9 Cir., 1951, 191 F.2d 993. Proof of the exact amounts of unreported income is not required. The evidence is sufficient if the jury is justified in finding therefrom, beyond a reasonable doubt, that there has been

---

11. For example, William E. Kyne testified that he kept the records of the B-R Smoke Shoppe; that these records consisted of a single entry each day, wheth- er the business had lost or won; that this daily entry was a net figure arrived at after all the expenses of doing business had been paid, including salaries.

a wilful attempt to evade taxes. United States v. Johnson, 1943, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546; Goldbaum v. United States, 9 Cir., 1953, 204 F.2d 74.

In the instant case the Government thoroughly investigated appellant's potential sources of net worth. It was not incumbent upon the prosecution to prove appellant's net worth to a mathematical certainty before the case could be submitted to the jury. As the Fourth Circuit said in Bell v. United States, 1950, 185 F.2d 302, certiorari denied 340 U.S. 930, 71 S.Ct. 492, 95 L.Ed. 671: "An estimate of the taxpayer's net worth as the means of determining his income is resorted to in the absence of accurate records which it is his duty under the statute to make and to preserve, *and by its very nature it is an approximation;* but it has been held in this and other jurisdictions to be an appropriate method to support a criminal prosecution under the statute * * *." (Emphasis added.) 185 F.2d at page 308. See also Gariepy v. United States, 6 Cir., 1951, 189 F.2d 459; Schuermann v. United States, 8 Cir., 1949, 174 F.2d 397, certiorari denied, 338 U.S. 831, 70 S.Ct. 69, 94 L.Ed. 505.

Reference was made during the trial to a certain safe deposit box in which appellant purported to keep money. Appellant contends that the possibility that substantial funds were kept in the box destroys the validity of the Government's net worth computations, yet appellant did not attempt in any way at the trial to prove that substantial funds were in fact kept in the box. Other evidence introduced at the trial, such as the fact that a judgment of $1800 obtained against appellant in 1938 was not paid until 1945, tended to show that appellant did not have substantial cash at the beginning of 1944. Requests by the Government to examine the contents of the safe deposit box were refused. If a defendant could prevent a case of this type

from being submitted to the jury merely by stating he had further assets not taken into consideration by the Government, yet refusing to disclose them, enforcement of the tax evasion provisions of the Internal Revenue Code would be completely frustrated. Skillful concealment cannot be made an invincible barrier to proof. United States v. Johnson, supra, 319 U.S. at page 518, 63 S.Ct. at page 1240. More than mere speculation is required to support a motion for judgment of acquittal. The only affirmative evidence concerning the safe deposit box in question was the testimony of one witness that on December 3, 1943 he placed $17,000 in the box. Were we to assume that this money remained in the box on December 31, 1943, the Government's case would not fall since the net worth computations, including the additional $17,000 as part of opening net worth for 1944, would still show unreported income of $14,747.91 for the year 1944.

Reliance is placed by appellant upon the cases of Bryan v. United States, 5 Cir., 1949, 175 F.2d 223,[12] and United States v. Fenwick, 7 Cir., 1949, 177 F.2d 488, where judgments of conviction were reversed because of the insufficiency of the evidence. This court, in Davena v. United States, 9 Cir., 1952, 198 F.2d 230, 231, questioned the "vitality" of the Fenwick case, and the majority opinion in the Bryan case was accompanied by a strong dissent. Although these decisions may well have been appropriate because of the particular facts there involved, we believe the general language of the opinions too narrowly limited the function of the jury as the triers of fact.

It is true, as appellant contends, that proof of increased net worth is only circumstantial evidence of taxable income.[13] The test to be applied on motion for judgment of acquittal in such a case, however, is not whether in the trial court's opinion the evidence fails to exclude every hypothesis but that of guilt, but rather

12. The Supreme Court granted certiorari to examine a procedural issue not relevant to the instant case and affirmed the Fifth Circuit's holding on that issue. 1950, 338 U.S. 552, 70 S.Ct. 317, 94 L. Ed. 335.

13. The District Court, in its instructions to the jury, properly explained the nature and effect of circumstantial evidence.

whether *as a matter of law* reasonable minds, as triers of the fact, must be in agreement that reasonable hypotheses other than guilt could be drawn from the evidence.[14] Stoppelli v. United States, 9 Cir., 1950, 183 F.2d 391, certiorari denied 340 U.S. 864, 71 S.Ct. 88, 95 L.Ed. 631. If reasonable minds *could* find that the evidence excludes every reasonable hypothesis but that of guilt, the question is one of fact and must be submitted to the jury. Curley v. United States, 1947, 81 U.S.App.D.C. 389, 160 F.2d 229, certiorari denied 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850; Stoppelli v. United States, supra. Judged by this standard, the motion for judgment of acquittal was properly denied in the present case.

Appellant argues in his reply brief that even if there was sufficient evidence to show a tax deficiency there was no evidence of fraud. A state of mind can seldom be proved by direct evidence but must be inferred from all the circumstances. A wilful intent to evade income taxes may be inferred from such factors as appellant's failure to include a substantial amount of income on his and his wife's tax returns, the failure to keep adequate books which would clearly reflect income, and the concealment of the ownership of property such as a safe deposit box, real estate interests, and business licenses. These factors, all present in the instant case, are but part of a general pattern of conduct engaged in by appellant from which the jury could infer the requisite intent. See Norwitt v. United States, 9 Cir., 1952, 195 F.2d 127, 132.

The Government contended during the trial that certain unincorporated business enterprises of the appellant were to be treated as sole proprietorships for tax purposes, while appellant contended that they were partnerships.[15] The test for determining recognition of a partnership for federal income tax purposes is whether "the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." Commissioner of Internal Revenue v. Culbertson, 1949, 337 U.S. 733, 742, 69 S.Ct. 1210, 1214, 93 L.Ed. 1659. This question is one of fact. Toor v. Westover, 9 Cir., 1952, 200 F.2d 713; Harkness v. Commissioner, 9 Cir., 1951, 193 F.2d 655, certiorari denied, 343 U.S. 945, 72 S.Ct. 1040, 96 L.Ed. 1349. There is substantial evidence to support the Government's contention that the alleged partnerships should not be recognized for tax purposes. The record discloses, among other things, that the enterprises were financed by a single fund belonging to appellant, that appellant made the policy decisions, that the purported partners were not to acquire an interest in the assets of the business until appellant had withdrawn an amount equal to his original capital investment, that no profits were actually distributed during the years in question to persons other than appellant, and that in at least one instance a new partner entered the business without another partner knowing the terms.

Two further contentions are made by appellant which pertain only to Counts Three and Four, the counts based upon the year 1945.

(1) Appellant asserts that in computing closing net worth for the year 1945 the Government improperly included $15,000 in markers or IOU's as cash of the B-R Smoke Shoppe, one of appellant's enterprises. Regardless of whether such markers should technically be treated as cash or accounts receivable, they were properly included as part of the assets of the business. Appellant can hardly rely upon the fact that the enterprise was engaged in the illegal business of bookmaking, and that therefore, under California law, the markers were unenforceable. It is obvious that appellant accepted markers as a substitute for cash from his customers because

---

14. We interpret Karn v. United States, 9 Cir., 1946, 158 F.2d 568, as holding in that case's factual context that no reasonable jury could have found that the evidence excluded every reasonable hypothesis but that of guilt.

15. The enterprises in question included the B-R Smoke Shoppe, Day-Nite Cigar Store, 110 Eddy Street, and the Menlo Club. The extent of appellant's interest in the 21 Club and the San Diego Social Club was not in dispute.

he thought he could find certain effective if not legal means of enforcing them. He considered the markers to be assets of his business, capable of being reduced to cash. We do not believe as a practical matter he was mistaken.

(2) In computing closing net worth for the year 1945 the Government recognized a debt of $100,000 owed by appellant to Gene Schriber as part of the $175,000 purchase price of the Menlo Club. Appellant argues that actually a sum of $125,000 was owing at the end of 1945. His position is supported by the testimony of Schriber and what purports to be a page of the 1947 Menlo Club ledger, this ledger being part of the records given to appellant's accountant Semenza prior to the trial and subsequently impounded with the court clerk by order of the Court during the trial. The Government relies upon a photostat of a page of the 1945 ledger of the Menlo Club, stating that the original was part of the records given to Semenza, that this page was never returned, and that the alleged page of the 1947 ledger upon which appellant relies first made its appearance upon return of the records to the clerk of the court. Appellant seeks to explain the inconsistency in the ledgers by stating that the first payment of $25,000 was returned to appellant so that a check for the same amount could be substituted in order to enable appellant to keep a record of the transaction. It is said that the 1945 ledger is in error in that it treats this transaction as two separate payments. This was a question of fact for the jury; it was resolved against appellant.

IV. Admissibility of Evidence.

Complaint is made to a number of rulings by the trial court in regard to the admission and exclusion of evidence during the course of the trial. Appellant's contentions must be considered in conjunction with the salutary rule that the discretion of the trial court should not be disturbed in such matters unless the accused has been deprived of substantial rights. See Fed. Rules Crim.Proc. rule 52(a). Upon reviewing the alleged errors in the light of the aforesaid principle of law, we cannot say that the District Court erred.

See United States v. Johnson, 1943, 319 U.S. 503, 519–520, 63 S.Ct. 1233, 87 L.Ed. 1546.

Witness Agnes Badobinatz was allowed to testify over appellant's objection, that in February of 1947 her husband, now deceased, told her that he was going to repay $5,000 he had borrowed from appellant. Appellant argues that since there was no testimony as to when the obligation was incurred the Government failed to lay a proper foundation for Badobinatz's testimony. Admission of this testimony, however, could not have been in any way prejudicial to appellant since the Government's final computation of appellant's net worth did not include this $5,000 for any of the years in question.

Witness A. V. Brady, an agent of the Bureau of Internal Revenue, testified concerning the investigation of appellant's tax liability and the preparation of the net worth statement upon which the Government's case was based. Appellant objects to Exhibit No. 183, the financial statement prepared by Brady to reflect changes in appellant's net worth during the years 1944–1946, which was admitted in evidence during the witness's testimony. It is urged that there was insufficient evidence to support admission of the statement. We have already held that the Government's evidence was sufficient to take the case itself to the jury. The net worth statement in question was constructed from all the evidence in the case. There was, therefore, sufficient evidentiary basis in the record for admission of the statement. Brady's estimate of appellant's federal income tax liability based upon the net worth computation was also admissible, since he was testifying as an expert witness.

During the trial appellant had sought to prove that at the end of 1946 he owed Robert Jeffress the sum of $50,000. The Court ruled that testimony by Jeffress's wife that in July of 1947 her now deceased husband told her of the debt and that part of it had been repaid was inadmissible. Since the jury was unable to agree in regard to the counts of the indictment pertaining to the year 1946, the propriety of

this ruling is not before us. We mention it, however, because of its connection with the following: Appellant told the Court that James Jeffress, the son of Robert Jeffress, was being called as a witness "to give testimony which raises the identical issue which was presented to your Honor in the matter of the testimony of Mrs. Jeffress, with relation to conversation with her late husband." Since at that particular time in the trial the prospective witness was unable to appear, appellant merely made an offer of proof, his counsel stating that he assumed the Court would make the same ruling as in the case of Mrs. Jeffress's testimony. The offer was rejected. In the course of the rather extended offer of proof there was one statement that in 1944 Robert Jeffress had told his son that he owed appellant the sum of $10,000 for money borrowed in 1943. Appellant now urges that the testimony of James Jeffress would have been admissible to show this fact. It seems clear to us that the offer of proof was at least primarily made to establish the debt of appellant to James Jeffress at the end of 1946 rather than a debt owed by Jeffress to appellant at the beginning of 1944. Appellant had a duty to make the purpose of his offer of proof clear. Evidence excluded for the only purpose for which it was offered cannot be properly asserted on appeal to be admissible for another purpose theretofore undisclosed. Flowers v. Bush & Witherspoon Co., 5 Cir., 1918, 254 F. 519. It is the duty of the party making the offer of proof rather than the Court to separate the various items of evidence embraced in a single offer. Lane v. United States, 9 Cir., 1944, 142 F.2d 249.

 Appellant also contends that the Court unduly restricted the cross-examination of witnesses Schriber, Weaver and Brady. The trial court may in the exercise of its sound discretion limit the extent of cross-examination. Todorow v. United States, 9 Cir., 1949, 173 F.2d 439, certiorari denied 337 U.S. 925, 69 S.Ct. 1169, 93 L.Ed. 1733; Chevillard v. United States, 9 Cir., 1946, 155 F.2d 929. No abuse of discretion appears.

V. Instructions to the Jury.

 Appellant urges that the trial court failed adequately to instruct the jury on the law applicable to the case in that the charge did not contain certain supplementary instructions which had been proposed by appellant.[16] The instructions given by the Court in the present case are similar in substance to the instructions reviewed in Barcott v. United States, 9 Cir., 1948, 169 F.2d 929, certiorari denied 336 U.S. 912, 69 S.Ct. 602, 93 L.Ed. 1076, where we held that the charge fully and fairly presented the law of the case. Upon examination of the instant charge in its entirety, we find that the instructions given fully protected the rights of appellant.

The instructions of the Court as to the net worth method of proxing tax evasion and the instructions as to the methods of

16. The Government cites Ziegler v. United States, 9 Cir., 1949, 174 F.2d 439, certiorari denied 338 U.S. 822, 70 S.Ct. 68, 94 L.Ed. 499, in contending that there could be no objection to any portion of the charge to the jury until the charge was given and that appellant has accordingly failed to satisfy the requirements of Rule 30, Federal Rules of Criminal Procedure. The facts in the Ziegler case were that the only objection made was at the time requested instructions were exchanged by counsel, and no objection was taken when the Court informed counsel of his proposed charge prior to final jury arguments. In the present case, on the other hand, objection was made by appellant to the instructions at the time provided by the Court, which was after the Court informed counsel of his proposed charge but prior to closing arguments to the jury. Since the record clearly discloses that the Court and counsel for both sides considered the procedure sufficient to satisfy Rule 30, and since the purpose of the rule has been served by giving the trial court opportunity to correct alleged errors in his charge, appellant's objections to the instructions have not been waived. Plain error in instructions should of course be noticed regardless of whether the matter was properly brought to the attention of the trial Court. Fed.R. Crim.P. 52(b); see such earlier cases as Screws v. United States, 1945, 325 U.S. 91, 107, 65 S.Ct. 1031, 89 L.Ed. 1495; Morris v. United States, 9 Cir., 1946, 156 F.2d 525, 527, 169 A.L.R. 305.

accounting to be used by a taxpayer were adequate when considered as a whole with the instructions concerning the elements of the crime, the Government's burden of proof, and other basic principles of criminal law applicable to this case.

 The jury was also properly instructed as to the test for determining the validity of a partnership for federal income tax purposes. The instruction requested by appellant, requiring the jury to find a valid partnership if certain testimony was believed, unduly emphasized particular phases of the evidence and would violate the rule that the question is one of fact to be decided from all the evidence.

 Appellant was not entitled to an instruction as to a possible inference to be drawn from the Government's failure to introduce in evidence all of appellant's business records in its possession. The records were originally prepared by appellant's business associates, were accessible to appellant prior to trial, and were at least surveyed by his accountants subsequent to the commencement of the Government's investigation of appellant's income tax liability. Ae we have previously noted, if any specific records had been thought beneficial to his case, appellant could have requested their production.

VI. Fair Trial.

 After the jury had returned its verdict, appellant moved for a new trial. The only new proposition asserted was that appellant had been substantially prejudiced and deprived of a fair trial by reason of certain conduct on the part of the jury, the Court, the prosecuting attorneys, and agents of the Federal Bureau of Investigation. Appellant's counsel averred in a supporting affidavit that the following facts were learned by them subsequent to the verdict of the jury: that in the early stages of the trial one of the jurors had been told by a person unknown to appellant's counsel that the juror could profit by bringing in a verdict favorable to appellant; that the juror thereupon reported this conversation to the trial judge; that the trial judge discussed the matter with the prosecuting attorneys, but did not at any time inform appellant's counsel of the incident; and that the Federal Bureau of Investigation was notified, conducted an investigation, and made a report to the trial judge. It is appellant's contention that the juror to whom the remark had been made would be apprehensive of being suspected of taking a bribe if he voted for a verdict in favor of appellant, and would therefore be prejudiced against appellant. The motion for a new trial requested the opportunity for a hearing to adduce evidence concerning the various conversations among the jurors to whom the remark had been made, the trial court, and agents of the Federal Bureau of Investigation "in order to fully investigate the same to determine to what extent it had any effect upon the jury and was prejudicial to the defendant."

The District Court in denying the motion did not abuse its broad power to grant or deny motions of this type, since there was a failure on the part of appellant to show prejudice. The very newspaper articles upon which appellant relies, and which were made a part of his motion, disclose that the juror believed the statement had been made to him in jest and only notified the trial judge because of his admonitions not to discuss the case. The judge also believed the statement had not been made seriously, but took the precaution of requesting an investigation by the Federal Bureau of Investigation, which in fact substantiated his belief that the remark had been made in jest. These circumstances do not indicate prejudice to appellant. It is obvious that if in fact an attempt had been made by persons associated with the defense to bribe a juror disclosure of the planned investigation would have greatly decreased the likelihood that such investigation would be successful. Appellant relied solely upon the affidavit of defense counsel stating what counsel had learned through the newspapers. If any jurors had received communications from the trial court or the Federal Bureau of Investigation of a nature which would tend to prejudice them against appellant, or had been subjected to other extraneous influences, such fact could have been ap-

propriately presented by submitting affidavits of the jurors themselves. See, for example, Mattox v. United States, 1892, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917.

Judgment affirmed.